IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lisa R. Lott,  Case No. 3:07CV1084

      Plaintiff,

v.  ORDER

Oriana House, Inc.,

      Defendant.

This is an employment discrimination case. Plaintiff Lisa Lott alleges defendant Oriana House, Inc. [Oriana House], an Ohio-based chemical dependency treatment and community corrections agency, fired her on the basis of her gender and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et. seq. and O.R.C. § 4112.02. Lott also brings claims for breach of express and implied contract of employment under Ohio law. Jurisdiction arises under 28 U.S.C. § 1331.

Pending is Oriana House's motion for summary judgment. [Doc. 29]. For the reasons discussed below, I grant the motion.

**Background**

Oriana House hired Lott, an African American female, in 2002. Lott previously earned an associate degree in human resources from Rhodes State College and procured a certified chemical dependency (CCD) counselor license from the State of Ohio.

Oriana House hired Lott as a chemical dependency treatment counselor. At the time of her employment, Oriana House provided Lott with an employee handbook, the organization's ethics

policies, and the Ohio code of ethics for chemical-dependency counselors. Lott also signed several documents, including a letter of employment, a "Receipt of Employee Handbook," and a "Receipt and Understanding of Operations Manual," all of which stated that the policies found within did not create an employment contract with Oriana House, but rather that Oriana House employed Lott on an at-will basis.

The parties dispute some of the events leading up to Lott's termination. Lott points to the fact that she received favorable evaluations in November 2003 and November 2004, the latter just days before she received an oral disciplinary warning on December 3, 2004 for improperly documenting a client session. Lott concedes, however, that she inaccurately dated certain client documents and created notes for sessions at which she was not present.[1]

In her deposition, Lott initially pointed to co-workers, including Mike Jaynes, Glen Fogle (alternatively referred to as Glen Fogel), and John Gessler (alternatively referred to as John Geslak), who she claims inaccurately documented information in client files without repercussion. Nevertheless, in each case of alleged error, Lott conceded that she lacked knowledge about the inaccuracy or the inaccuracy differed from the problems that led Oriana House to terminate Lott

---

[1] Oriana House alleges that through the course of her employment, Lott kept disorganized files, inaccurately documented notes, and falsified information included in the client files. It specifically points to three events. First, in November 2003, Lott allegedly prepared notes for an Aftercare session that Mike Jaynes, another treatment counselor, conducted for her. Second, Oriana House claims that Lott recorded a double Aftercare group in August 2004 as two separate groups, dating the first group as occurring on the correct date and the second group for the following week. Third, Oriana House claims that Lott recorded notes for an individual counseling session that occurred in September 2004 at a time during which she was not working.

Furthermore, Oriana House notes that Lott frequently avoided turning over all of her completed files to Senior Treatment Counselor Mike Jaynes for review.

(e.g. a counselor documenting or making progress notes for a counseling session he or she did not attend). (*See* Lott Dep. at 90, 93-94, 98-99).

On January 26, 2005, Oriana House, citing the aforementioned documentation errors, issued a warning to Lott, and notified her that it was imposing a two-day disciplinary suspension. The warning stated that Jaynes discovered Lott had written two inaccurate progress notes. The warning also placed Lott on an action plan that required her to follow all the directives and procedures included in a previously distributed memorandum.

Although Lott received the warning and instruction to follow the action plan in January 2005, Lott claims she did not meet with Jaynes to discuss the plan until March. Lott does not remember being told that she failed to comply with either Oriana House's requirements or Ohio law. Point five in the warning, however, notified Lott to "[b]e aware that continued actions and/or occurrences of this and/or a similar nature may lead to further disciplinary action up to and including termination of employment." (Lott Dep., Ex. N.)

After Lott allegedly failed to improve her record keeping practices, Oriana House terminated her employment on April 28, 2005. Scott Williams, a caucasian male, replaced Lott.

On April 12, 2007, Lott filed suit against Oriana House, alleging Title VII violations as well as violations to the Ohio Civil Rights Act, R.C. § 4112.02. She is seeking reinstatement to her former position as a chemical dependency counselor together with back pay, seniority, and benefits. In the alternative, Lott seeks front pay in lieu of reinstatement, and compensatory and punitive damages from judgment against Oriana House.

## Discussion

### 1. Standard of Review

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the district court of its motion's basis, and identifying the record's portions demonstrating the absence of a genuine issue of material fact. *Id. at 323*.

The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmovant cannot rest on its pleadings or merely reassert its previous allegations; rather, it must show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In this manner, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of concrete evidentiary material to support its position. *Celotex, supra*, 477 U.S. at 324.

Lott alleges that Oriana House's actions violated Title VII and O.R.C. § 4112.02(A)'s prohibition on gender- and race-based employment discrimination. She also alleges her termination constituted a breach of either an express or implied contract of employment.

I evaluate claims related to violations of R.C. § 4112 under the same standard as claims brought under Title VII. *Guy v. Cent. Locating Servs., Ltd.*, 389 F.Supp. 2d 843, 848 (N.D. Ohio 2005); *Myers v. Goodwill Indus. of Akron, Inc.*, 122 Ohio App. 3d 294, 301 (1997) ("The evidentiary standards applicable to a determination of whether Title VII has been violated apply to the determination of whether R.C. Chapter 4112 has been violated.")

4

In the absence of direct evidence, to survive a motion for summary judgment a plaintiff must make out a prima facie case of employment discrimination under the *McDonnell Douglas* burden-shifting regime. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). To do so, a plaintiff must show that: 1) she was a member of a statutorily "protected class"; 2) the employer discharged the plaintiff; 3) she was "qualified" for the position; and 4) the employer either replaced the plaintiff with a member of an unprotected class or treated a comparable, non-protected person more favorably.[2] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *McDonnell v. Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Wagner v. Allied Steel & Tractor Co.*, 105 Ohio App. 3d 611, 614 (1994); *Poppy v. Willoughby Hills City Council*, 2005 WL 1007234, at *6 (Ohio Ct. App.).

If a plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to present proof that legitimate, nondiscriminatory rationales motivated its decision to terminate the plaintiff. *Michael, supra*, 496 F.3d at 593. Once the defendant makes that showing, the burden shifts back to the plaintiff, who must prove that the defendant's reason is simply a pretext to mask discrimination. *Id.* To establish pretext, the plaintiff must demonstrate that the employer's stated reasons: 1) have no basis in fact; 2) did not actually motivate the termination; or 3) were insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).

### 2. Race and Gender Discrimination Claims Under Title VII and O.R.C. Chapter 4112

---

[2] As the *McDonnell Douglas* court noted, the specifications of the prima facie proof a court requires from a defendant will vary depending on each case's factual situation. *McDonnell v. Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973)

Lott has sufficiently established a prima facie case of racial and gender discrimination.

As an African American and a woman, Lott is a member of two protected classes. 42 U.S.C. § 2000e-2(a) (making it unlawful to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin"); O.R.C. § 4112.02(A) (making it an unlawful discriminatory practice "For any employer, because of the race, color, . . . [or] sex . . . of any person, to discharge without just cause"). Lott also meets the second requirement as Oriana House terminated her employment.

With regard to the third prong of the standard, Oriana House argues that Lott was not qualified and alleges that her job performance did not meet its legitimate expectations. A court, however, should determine a plaintiff's qualification status based on whether she was "meeting the employer's expectations prior to and independent of the events that led to the adverse action." *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (citing *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 585 (6th Cir. 2002)). To do otherwise "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-1 (6th Cir. 2000)).[3] A plaintiff, therefore, can establish that she is

---

3

In its brief, Oriana House relies on an alternative line of cases centering on *Ang v. Proctor & Gamble Corp.*, 932 F.2d 540 (6th Cir. 1991). In *Ang,* the Sixth Circuit held an employee unqualified for his position based on the same events and rationales that led the employer to terminate the employee. *Id.* at 548-49 (deeming plaintiff employee unqualified because he spent too much time on personal grievances, had trouble communicating, was late with assignments, used insufficient detail in writing plans, and was a poor long-range planner).

More recent cases, however, demonstrate a shift away from the *Ang* analysis and toward the approach described in Lott's brief. *See, e.g.*, *Tysinger v. Police Dept. of City of Zanesville*, 463 F.2d

6

qualified for the position by presenting credible evidence that her qualifications meet the minimally objective criteria required for employment. *Id.* at 575-76.

Lott's qualifications for the position included an associate degree in human resources and a CCD1 license from the State of Ohio. However inadequate her actual job performance was to Oriana House, she was qualified to fill the position of counselor.

Finally, Lott meets the fourth requirement to establish a prima facie case because she was replaced by a member of an unprotected class, namely, a caucasian male.[4]

In rebuttal, Oriana House provides a legitimate, nondiscriminatory reason for discharging Lott: her failure to adequately maintain client files and her falsification of records.

The ultimate burden, therefore, falls on Lott, who must show that Oriana House's explanation is pretextual and that gender and/or race motivated the organization's decision. She can do this by showing, "by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that

---

569, 573 (6th Cir. 2006); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff."); *Quinn-Hunt v. Bennett Enters., Inc.*, 211 Fed. Appx. 452, 457 (6th Cir. 2006) (unpublished disposition) ("[T]he court's determination regarding whether Quinn-Hunt was qualified improperly considered the events that led to her termination.").

[4] Oriana House misstates the fourth requirement for a prima facie case in its brief. This requirement contains a disjunctive clause; Lott had to prove either that she was replaced by an unprotected person *or* that she was treated less favorably than similarly-situated employees. *See, e.g.*, *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Because Lott showed that she was replaced by a caucasian male, Oriana House's arguments alleging that other employees were not similarly situated are beside the point.

7

they were insufficient to motivate discharge." *Manzer, supra,* 29 F. 3d at 1084 (quoting *McNabola, supra*, 10 F.3d at 513).

While Lott challenges the veracity of Oriana House's reasons for firing her, she admits the accuracy of the defendant's view of some of her conduct. Her main rebuttal is that the punishments were disproportionate and/or that other employees made similar errors. Therefore, Lott appears to abandon a fact based argument (point one) for a sufficiency argument (point three). Arguments supporting point three usually consist "of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.*

Lott, however, fails to show that similarly situated employees made the same mistakes. *Id.*; *see also Johnson v. Kroger Co.*, 319 F.3d 858, 867 ("This court has explained that 'the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in all of the *relevant* aspects' in order for the two to be similarly-situated." (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998))). Furthermore, while Lott downplays her errors, she does not sufficiently dispute the defendant's arguments regarding the magnitude and relevance of her mistakes.

Lott also fails to show that a trier of fact could find that the proffered reasons for her termination did not actually motivate Oriana House's actions. When arguing that discrimination, rather than the employer's stated reasons, led to a discharge, a plaintiff "may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of . . . discrimination." *Manzer, supra*, 29 F. 3d at 1084; *see also Niswander v. Cincinnati Inc. Co.*, 529 F.3d 714, 728 (6th Cir. 2008). In other words Lott must show "that the sheer weight of the circumstantial evidence of

8

discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer, supra*, 29 F. 3d at 1084. Lott's descriptions of her work environment, while troubling, do not come close to meeting this standard.

Because Lott cannot show that Oriana House's reasons for firing her were pretextual, I grant summary judgment as to her gender and race discrimination claims.

### 3. Implied Contract of Employment Claim

In her brief, Lott withdrew her claim that she worked under an express employment contract. Only her implied contract of employment claim remains.

Under Ohio law, a contract for permanent employment is generally held to be terminable at the will of either party. *Henkel v. Educ. Research Council*, 45 Ohio St. 2d 249, 254-56 (1976); *McIntosh v. Roadway Express, Inc.*, 94 Ohio App. 3d 195, 200 ("Under Ohio law, an employment relationship, absent an agreement to the contrary, is regarded as an employment at will which can be terminated at any time by the employer."). Courts have, however, recognized two exceptions to this general policy, namely when: 1) the employer's representations or promises made to the employee constitute promissory estoppel, or 2) an employee handbook, company policy, or oral representation gives rise to an implied contract that alters the at-will relationship. *McIntosh v. Roadway Express, Inc.*, 94 Ohio App. 3d 195, 200 (1994) (citing *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 104 (1985)).

The provisions of an employee handbook can "alter the terms of an at-will employment relationship only if the employer and the employee have agreed to create a contract from the writing." *Id.* (citing *Tohline v. Cent. Trust Co.*, 48 Ohio App. 3d 280, 282 (1988). Without "mutual assent," a handbook is simply a statement of policies distributed by the employer. *Id.* Accordingly,

9

a plaintiff must carry the heavy burden of establishing every element of contract formation for a court to find an implied contract. *Stickler v. KeyCorp*, 2003 WL 157388, at *4 (Ohio Ct. App.).

In the instant case, Lott alleges that an implied contract arose out of Oriana House's Employee Handbook. However, in numerous documents, including the letter of employment that Oriana House provided to Lott and the "Receipt of Employee Handbook" document that Lott signed, Oriana House expressly stated that Lott was an at-will employee. Even if Lott believed at the time of her hiring that she had signed on to an implied contract of employment, Oriana House clearly did not have the same intent. Therefore, there was no "meeting of the minds." *Kiel v. Circuit Design Technology, Inc.*, 55 Ohio App. 3d 63, 66 (Ohio Ct. App. 1988) ("Absent the necessary meeting of the minds, an employee handbook merely constitutes 'a unilateral statement of company rules and regulations.'" (quoting *Turner v. SPS Technologies, Inc.*, 1987 WL 11967, *3 (Ohio Ct. App.))).

As a result, I grant summary judgment as to Lott's implied contract claim.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant Oriana House's motion for summary judgment [Doc. 29] be, and the same hereby is granted.

So ordered.

                                              s/James G. Carr
                                              James G. Carr
                                              Chief Judge